JEFFREY VAN KENT, OSB #214271
Van Kent Law, LLC
PO Box 83567
Portland, OR 97283
Tel: (503) 893-5545
Fax: 1 (503) 300-6199
E-mail: Jeffrey@vankentlaw.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| HARRY DOUGLAS; KARRIE HOLMAN<br><br>Plaintiffs,<br><br>v.<br><br>GRAND MANAGEMENT SERVICES, INC.;<br>BARBARA JOHNSON-MARTIN;<br>LUCIUS CALVIN MARTIN AS TRUSTEE<br>OF L CALVIN MARTIN & BARBARA<br>JOHNSON-MARTIN FAMILY TRUST;<br>BARBARA JOHNSON-MARTIN AS<br>TRUSTEE OF L CALVIN MARTIN &<br>BARBARA JOHNSON-MARTIN FAMILY<br>TRUST<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>Federal Fair Housing Act,<br>42 U.S.C. §3601 et seq., and<br>Negligence<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Plaintiffs Harry Douglas ("Mr. Douglas") and Karrie Holman ("Ms. Holman") are tenants at a Tillamook County, Oregon, senior apartment complex owned and managed by Defendants.

Mr. Douglas suffers from a chronic autoimmune, neuromuscular disease that causes weakness in his skeletal muscles. In October 2023, Mr. Douglas was severely injured from a fall off his concrete patio while trying to reach the front exterior door of his apartment, leading to extensive hospitalization, inpatient and at-home medical treatment, and ongoing pain. A year and a half earlier, Defendants had approved a reasonable accommodation for a ramp on the apartment's front patio, based on a written request from Mr. Douglas' doctor. Nonetheless, Defendants failed to install the ramp before Mr. Douglas' October 2023 fall.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a)(3), as Plaintiffs' claims arise under the laws of the United States, and 42 U.S.C §3601 et seq., as Plaintiffs' claims involve discriminatory housing practices.

3. This action is expressly authorized under the Fair Housing Act, 42 U.S.C. §3601 et seq.

4. This Court has personal jurisdiction over the parties as follows:
   a) Plaintiffs Harry Douglas and Karrie Holman, as residents of Tillamook, Oregon;
   b) Defendant Grand Management Services, Inc., as an Oregon corporation with a principal place of business in Coos Bay, Oregon, and as the property manager of the relevant real property located in Tillamook, Oregon;
   c) Defendants Lucius Calvin Martin and Barbara Johnson-Martin as residents of Medford, Oregon, and as trustees of L Calvin Martin & Barbara Johnson-Martin Family Trust, owner of the relevant real property located in Tillamook, Oregon. FRCP 4(k)(1)(A).

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) given that: Defendants own and manage the real property in Tillamook County, Oregon, conduct regular business in Tillamook County, Oregon, and all the events giving rise to Plaintiffs' claims occurred in and involved the real property in Tillamook County, Oregon.

## PARTIES

6. Plaintiffs Harry Douglas ("Mr. Douglas") and Karrie Douglas ("Ms. Holman") are a married senior couple renting an apartment at 3810 12th Street in Tillamook, Oregon.

7. Defendant Grand Management Services, Inc., ("Grand Management") is a property management company that operates the Evergreen Gardens Apartments located at 3810 12th Street in Tillamook, Oregon, and has managed the property since at least as early as January 2022.

8. Defendant Barbara Johnson-Martin, as an individual, and Defendants Lucius Calvin Martin and Barbara Johnson-Martin, as trustees of the L Calvin Martin & Barbara Johnson-Martin Family Trust (collectively referred to herein as the "Property Owners"), own the Evergreen Gardens Apartments located at 3810 12th Street in Tillamook, Oregon, and have collectively owned the property since at least as early as April 22, 2022.

## FACTS

9. In January 2022, Mr. Douglas and Ms. Holman began renting Unit 6A (the "Rental Home") at the Evergreen Gardens Apartments.

10. The Evergreen Gardens Apartments is a United States Department of Agriculture Rural Development-subsidized housing complex and Plaintiffs receive federal assistance from the Northwest Oregon Housing Authority pursuant to Section 8 of the Housing Act of 1973 (42 U.S.C. § 1437f) in the form of a Housing Choice Voucher.

11. The Rental Home's front door threshold is elevated relative to the Rental Home's concrete patio and the apartment complex's walkway.

12. On or about March 15, 2022, Ms. Holman submitted to Grand Management a medical provider letter requesting that the landlord provide a ramp to the Rental Home's front door and a mailbox at the front door due to Mr. Douglas' disability.

13. Specifically, the March 8, 2022, medical provider letter disclosed that Mr. Douglas was diagnosed with "Myasthenia Gravis which can result in weakness and double vision that can

limit the patient's ability to walk for distances." The letter also stated that multiple other diagnoses further limit his functional capacity.

14. On or about April 22, 2022, Grand Management issued a letter to Mr. Douglas acknowledging receipt of an "RA" received on March 15, 2022. The Grand Management letter states "[w]e have reviewed and approved the reasonable accommodation letter from your doctor for you to have ramps installed at your front door and your mailbox installed at your front door." The letter goes on to state "GMS will install ramp and mailbox as soon as allows [sic] our budget allows us to do so."

15. Between March 15, 2022, and October 21, 2023, neither Grand Management nor the Property Owners installed a ramp at the Rental Home's front door.

16. On October 21, 2023, while walking on the Rental Home's concrete patio attempting to get to the front door, Mr. Douglas took a fall due to his disability. The fall caused Mr. Douglas to break bones in both his upper arms. Mr. Douglas would not have fallen but for the lack of a ramp with appropriate handrails.

17. Mr. Douglas was transported by ambulance to the emergency department of the local Adventist Health Hospital, where he was admitted and stayed for approximately a week due to his injuries.

18. After a week in the hospital, Mr. Douglas was transported by ambulance to Life Care Center of McMinnville, where he stayed for inpatient rehabilitative medical services for approximately seven weeks.

19. During Mr. Douglas' stay at the Life Care Center in McMinnville, Ms. Holman attempted to visit about every other day but struggled to afford the fuel and vehicle upkeep necessary to travel the approximately 134-mile roundtrip from Tillamook.

20. After his return home, Mr. Douglas began receiving weekly in-home visits by a nurse, physical therapist, and occupational therapist.

21. To date, Mr. Douglas' right upper arm has not healed from his initial October 2023 fall. It causes Mr. Douglas substantial pain, and his orthopedic surgeon presented him with a few

options: live with the pain for the rest of his life, undergo an intensive surgery without general anesthesia, or undergo the surgery with general anesthesia despite the significant risk that he would not survive due to preexisting conditions.

22. Then, on April 20, 2024, the unhealed right upper arm bone tore through Mr. Douglas' skin resulting in bleeding.  On April 22, 2024, based on a consultation with his orthopedic surgeon, Mr. Douglas was transported to the Adventist Health Hospital emergency room by ambulance.  He was admitted to the hospital and underwent surgery on his shoulder.

23. Due to Defendants' failure to install a ramp between March 15, 2022, and October 21, 2023, Mr. Douglas incurred and continues to incur medical costs.  He has also experienced severe emotional distress and mental suffering, including but not limited to extreme pain, discomfort, fear, anxiety, stress, anger, sadness, loneliness, hopelessness, helplessness, humiliation, and mental anguish, as well as lethargy, weakness, nausea, and interference with sleep.  Additionally, he has experienced substantial disruption to daily life activities and a loss of consortium as to his wife, Ms. Holman.

24. Due to Defendants' failure to install a ramp between March 15, 2022, and October 21, 2023, and Mr. Douglas' subsequent injuries, Ms. Holman has experienced severe emotional distress and mental suffering, including but not limited to fear, anxiety, stress, anger, sadness, loneliness, hopelessness, helplessness, humiliation, and mental anguish, as well as physical manifestations including lethargy, weakness, nausea, headaches, and interference with sleep.  Additionally, she has experienced substantial disruption to daily life activities, disruption to her own self-care, and a loss of consortium as to her husband, Mr. Douglas.

## CLAIMS FOR RELIEF

### PLAINTIFFS' FIRST CLAIM FOR RELIEF

### (42 U.S.C. § 3604 – Disability Discrimination)

25. Plaintiffs reallege the paragraphs above and incorporate them herein.

26. Based on Mr. Douglas' handicap, Defendants violated 42 U.S.C. § 3604(f) by discriminating against Mr. Douglas and Ms. Holman, in the terms, conditions, or privileges of their rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, by refusing reasonable modifications necessary to afford Mr. Douglas and Ms. Holman's full enjoyment of the premises.

27. As a result of Defendants' discriminatory acts, Mr. Douglas and Ms. Holman are each entitled to economic and noneconomic damages (including but not limited to damages for past and future medical costs, emotional distress and mental suffering, and punitive damages) in an amount to be determined at trial pursuant to 42 U.S.C. § 3613(c)(1), and attorney fees and costs pursuant to 42 U.S.C. § 3613(c)(2).

## PLAINTIFFS' SECOND CLAIM FOR RELIEF

### (Negligence)

28. Plaintiffs reallege the paragraphs above and incorporate them herein.

29. Defendants owed Plaintiffs a duty to operate the apartment complex in a manner free from unlawful discrimination, to be familiar with state and federal laws, to ensure that those laws are obeyed by their agents and employees, and to modify Plaintiffs' Rental Home in a timely manner upon receiving notice of Mr. Douglas' condition. The special relationship of landlord and tenant creates a heightened duty between the parties.

30. Defendants failed to act in a reasonable manner and negligently violated their duties owed to Plaintiffs when they failed to install Plaintiffs' requested modifications in a timely manner.

31. It was foreseeable that Defendants' negligent conduct would cause Plaintiffs' injuries as alleged in Paragraphs 23 and 24, above.

32. Based on Mr. Douglas' handicap, Defendants violated 42 U.S.C. § 3604(f) by discriminating against Mr. Douglas and Ms. Holman, in the terms, conditions, or privileges of their rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, by

refusing reasonable modifications necessary to afford Mr. Douglas and Ms. Holman's full enjoyment of the premises.

33. As a result of Defendants' negligence, Mr. Douglas and Ms. Holman are each entitled to economic and noneconomic damages (including but not limited to damages for past and future medical costs, emotional distress and mental suffering, and punitive damages) in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief. Award judgments in favor of Plaintiffs and against Defendants for:

a. Compensatory and punitive damages to be determined at trial;

b. Costs and reasonable attorney fees pursuant to 42 U.S.C. § 3613(c)(2); and

c. Such other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

DATED this 22nd day of April 2024

/s/ *Jeffrey Van Kent*
Jeffrey Van Kent, OSB No. 214271
Email: Jeffrey@vankentlaw.com
PO Box 83567
Portland, OR 97283
(503) 893-5545

Attorney for Plaintiffs